BEFORE THE FIRST DIVISION, OCTOBER 1, 1962

No. 67089.—M. Velez & Company *v.* United States, protest 59/27094 (San Juan).

OLIVER, Chief Judge: The merchandise the subject of the above-enumerated protest is described on the invoice accompanying the entry as "PENCILS. 50 gross. Ball Pencils." It was classified by the collector of customs under the provision in paragraph 1550(b), Tariff Act of 1930, as modified by T.D. 54108, for fountain or stylographic pens, and duty was taken at the rate of 60 cents per dozen and 34 per centum ad valorem. The protest claim is for duty at the rate of 50 cents per gross and 15 per centum ad valorem under the provision in paragraph 1549(a) of the said act, as modified by T.D. 52739, supplemented by T.D. 52820, for—

Pencils of paper, wood, or other material not metal, filled with material other than black lead or copy or indelible lead, not specially provided for.

A sample of the merchandise involved is before us as plaintiff's exhibit 2. It consists of what appears to be an ordinary hexagonal wooden pencil, at the point end of which there is a metal tip.

Inspection of the sample under a magnifying glass shows that there is a tiny ball set into the end of the metal tip and the record indicates that, in the center of the article, there is a plastic container holding a supply of a liquid or semi-liquid substance, apparently similar to the ink found in ballpoint pens. As a matter of fact, it appears that the article is generally known as a "ball point pencil."

It can be readily seen that the competition in this case is between the term "fountain [and] * * * stylographic pens," found in paragraph 1550(b), *supra*, and the term "pencils," as found in paragraph 1549(a), *supra*. The article has the outward form of a pencil, but in its use and effect it has the characteristics of a pen, specifically, of a ballpoint pen.

The evidence offered on behalf of the plaintiff was directed toward establishing that the article was bought and sold in the trade and commerce of the United States under the designation "pencil."

The contentions made by the plaintiff are to the effect that, under the doctrine of commercial designation, the tariff term "pencils" embraces the instant merchandise and that it is excluded from the tariff terms for fountain and stylographic pens. Alternatively, plaintiff contends that the merchandise is excluded from the coverage of the provision for fountain or stylographic pens because it cannot be refilled. As a further alternative, plaintiff contends that, in its application to the present merchandise, the term "pencils" is relatively more specific than the terms "fountain pens" and "stylographic pens."

The doctrine of commercial designation is one well settled in customs jurisprudence. Briefly, it may be invoked where it has been shown that the commercial meaning of a tariff term is different from its common meaning. In such case, the commercial meaning will be applied, provided that it has been established that such meaning is definite, uniform, and general, and not partial, local, or personal. *Sonn* v. *Magone*, 159 U.S. 417, 40 L. Ed. 203.

The evidence offered by the plaintiff on this point falls far short of establishing the requisite proof of commercial designation. It consists of the oral testimony of a member of the importing firm with respect to his own experience in the purchase and sale of the item here in question and similar domestically made items. The witness' experience was in connection with local transactions only and cannot be considered as establishing that the term "pencils," in the trade and commerce of the United States dealing in such merchandise, definitely, uniformly, and generally embraced merchandise such as that at bar.

Plaintiff's claim that the merchandise at bar is excluded from coverage under the terms "fountain pens" and "stylographic pens" is predicated upon a contention that those terms are synonymous and refer to a pen the reservoir of which can be refilled. It is obvious from the construction of the article at bar that, when the ink in the reservoir or plastic container is exhausted, it is not refillable and that the article is then ordinarily thrown away.

However, we do not think that recourse to dictionaries and other sources from which the common meaning of words can be derived supports the view that it is a *sine qua non* of a fountain pen that it be capable of being refilled.

Webster's New International Dictionary, 2d edition (1945), refers to a "fountain pen" as—

A pen with a reservoir in the holder which furnishes a supply of ink,

and to like effect is the definition found in Funk & Wagnalls New Standard Dictionary (1942).

Plaintiff's final alternative contention seeks to invoke the rule of relative specificity. Briefly, this rule of classification states that, of two or more tariff terms, both embracing the imported merchandise, that one which more narrowly or specifically describes the merchandise shall be preferred over the others.

As we have said, the article at bar has the outward form, but no other characteristic, of a pencil. In use and in all other characteristics, however, it is a ballpoint pen and responds to the common meaning of a fountain pen in that it has a reservoir in the holder which furnishes a supply of ink. We are of the opinion that, even if the article can be considered in any way to be a pencil, classification for duty purposes must be made under the provision for fountain pens, inasmuch as that provision more specifically describes it than the provision for pencils.

For the foregoing reasons, the protest claim is overruled, and judgment will issue accordingly.